**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RAYMOND MATTHEWS, #R33172, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 18-cv-00490-SMY ) |
| KIMBERLY BUTLER, ANTHONY WILLIAMS, J. CARTER, LT. KOEHN, KENT BROOKMAN, JORDEN SPARLING, LORI OAKLEY, LARISSA WANDRO and JACQUELINE LASHBROOK, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Raymond Matthews, an inmate who is currently incarcerated at Hill Correctional Center ("Hill"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Menard Correctional Center ("Menard"). (Doc. 1). According to the Complaint, Menard inmates were placed on a gallery-wide commissary restriction after a single inmate made too much noise in his cell. (Doc. 1, pp. 4-11). When Plaintiff complained about the restriction, the defendants allegedly took retaliatory disciplinary action against him that led to his punishment with a disciplinary ticket and placement in segregation. *Id*. Plaintiff now asserts claims against the officials who were involved in this conduct under the First, Eighth and Fourteenth Amendments. (Doc. 1, p. 1). He seeks declaratory judgment and monetary damages. (Doc. 1, p. 19).

1

This matter is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **Complaint**

While housed in Menard's North 2 Cell House (8 Gallery) on March 8, 2016, Plaintiff overheard a correctional officer tell several inmates in the general population that they were not authorized to shop in the prison's commissary. (Doc. 1, p. 5). One of these inmates responded by banging on the bars of his cell. *Id*. Officer Jorden Sparling heard the commotion and

announced that every inmate in 8 Gallery would be placed on a commissary and shopping restriction. *Id*.

Plaintiff "expressed his objection" to this decision and asked Officer Sparling for permission to speak with his supervisor. (Doc. 1, p. 5). Officer Sparling assured Plaintiff that his supervisor approved of the restriction. (Doc. 1, pp. 5-6). When Plaintiff requested a grievance form, the officer told him that his supervisor would not allow him to distribute them to inmates. (Doc. 1, p. 6). Plaintiff explained that he had a right to purchase writing materials and mail supplies necessary to access the courts, as well as hygiene products necessary for self-care. *Id*. He also told Officer Sparling that he was "abusing his authority" by denying him access to the commissary and forms. *Id*. Officer Sparling assured Plaintiff that he definitely would not be going to the commissary after threatening the officer with grievances and lawsuits. *Id*. Plaintiff requested a crisis intervention counselor instead. *Id*.

Around the same time, a mental health professional (Ms. Franklin) was making rounds. (Doc. 1, p. 6). She put Plaintiff in contact with a counselor named Ms. Meyer. (Doc. 1, pp. 6-7). Plaintiff met with Ms. Meyer and told her about the events that transpired in 8 Gallery that day. (Doc. 1, p. 7). As Plaintiff left the appointment to return to his cell, Officer Sparling told him that he should "think twice" before threatening to sue the officer and requesting crisis intervention. *Id*. Officer Sparling then took Plaintiff to segregation, where all of his property was confiscated. *Id*.

Plaintiff was placed in a dirty cell and denied hygiene items, cleaning supplies and a floor rug. (Doc. 1, p. 8). Bright lights illuminated his cell day and night. (Doc. 1, p. 9). He was issued a single suicide mattress, blanket and smock. *Id*. He was denied showers, recreation, books, writing materials and mail supplies. *Id*. Correctional officers, including Officer Sparling,

3

regularly appeared at Plaintiff's cell and taunted or threatened him not to tell mental health unless he wanted to "accidentally commit suicide." *Id*.

Officer Sparling issued Plaintiff a disciplinary ticket the same day for intimidation and threats (DR 504 #206), insolence (DR 504 #304) and disobeying a direct order (DR 504 #403). (Doc. 1, p. 7). He received the ticket before a hearing investigator had an opportunity to investigate the matter. *Id*.

Plaintiff again asked to speak with the crisis intervention team on March 12, 2016. (Doc. 1, p. 7). He met with Ms. Meyer the same day and complained of anxiety and depression resulting from the events that transpired on March 8, 2016. (Doc. 1, p. 8). Ms. Meyer placed Plaintiff on suicide watch. *Id*. He was moved from his segregation cell (North 2 #242) to another cell (North 2 #505). *Id*. Property that was returned to him one day earlier was again confiscated, including the clothes he was wearing. *Id*. In protest of "all these actions," Plaintiff went on a hunger strike on March 14, 2016. *Id*.

The next day, Plaintiff was found guilty of disciplinary violations at an adjustment committee hearing that he was not allowed to attend. (Doc. 1, p. 8). He was punished with 3 months of C-grade, commissary restriction and segregation. (Doc. 1-1, p. 6). The final disciplinary hearing report indicated that Plaintiff "refused to attend the hearing." (Doc. 1, p. 8; Doc. 1-1, p. 6).

On March 16, 2016, Plaintiff again spoke with Ms. Meyer. (Doc. 1, p. 9). She agreed to take him off of suicide watch and return his personal property items to him (*e.g.*, hygiene supplies, bedding, property and clothes). *Id*. Despite these assurances, Plaintiff remained on suicide watch under the same conditions described above until April 6, 2016. *Id*. He blames this on a conspiracy between the mental health professionals and prison staff. *Id*.

4

On March 17, 2016, Major Carter and Lieutenant Koehn spoke with Plaintiff about the reason for his hunger strike. (Doc. 1, p. 9). After Plaintiff told them about the disciplinary ticket, the officers stated that they believed Plaintiff "didn't do what . . . Sparling accused him of [doing]." *Id*. Plaintiff had a similar conversation with Anthony Williams a few days later. (Doc. 1, pp. 9-10).

Plaintiff ended his hunger strike on March 23, 2016. (Doc. 1, p. 10). In exchange, he received the clothes that he was wearing before he was placed on suicide watch (*i.e.*, boxers, t-shirt, socks, gym shoes and jumpsuit). *Id*. However, he was not provided with bedding, hygiene items, cleaning supplies, showers, books, writing materials, mail supplies or recreational opportunities until he was removed from suicide watch on April 6, 2016. *Id*.

On June 1, 2016, the adjustment committee reconvened to reconsider the disciplinary ticket issued on March 8, 2016. (Doc. 1, p. 10). Although Plaintiff was given no advance notice of the hearing, he was allowed to appear and challenge the ticket. *Id*. He objected to the makeup of the committee, which was chaired by the same individual who conducted the first hearing (Kent Brookman). (Doc. 1, p. 11). Plaintiff requested a new chairperson, as well as a continuance to prepare for the hearing and request witnesses. *Id*. The committee ignored Plaintiff's requests and found him guilty once again. *Id*.

On June 4 or 5, 2016, Plaintiff received a response to the grievance he filed to challenge the original adjustment committee decision. (Doc. 1, p. 12). Lori Oakley remanded the matter for rehearing, and Kimberly Butler concurred with this decision. *Id*. Plaintiff received the response after the rehearing occurred. *Id*.

Plaintiff filed grievances and appeals to challenge the disciplinary action taken against him and the conditions of his confinement, but he received few responses to them. (Doc. 1, pp.

12-13). Counselor Hill agreed to look into the status of these grievances but failed to do so. *Id*. Sometime around November 2016, Plaintiff received notice that the Administrative Review Board recommended that the disciplinary ticket be expunged. (Doc. 1, p. 13). Although the ticket was expunged, Plaintiff was still subject to unspecified "repercussions," which Larissa Wandro would not lift. (Doc. 1, p. 14). Warden Jacqueline Lashbrook agreed with Wandro's decision on January 20, 2017. (Doc. 1, pp. 14-15).

## Discussion

The Court deems it appropriate to divide the *pro se* action into the following enumerated counts to facilitate the orderly management of future proceedings in this case and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b):

> **Count 1 -** First Amendment retaliation claim against Officer Sparling for issuing Plaintiff a false disciplinary ticket because he requested grievance forms in March 2016.
>
> **Count 2 -** First Amendment retaliation claim against Officer Sparling for issuing Plaintiff a false disciplinary ticket because he requested crisis intervention services in March 2016.
>
> **Count 3 -** Conspiracy claims against "IDOC Staff and Mental Health Services" for placing Plaintiff on suicide watch in a dirty cell and depriving him of personal property, outdoor recreation, writing materials and mail supplies for a month in 2016.
>
> **Count 4 -** Fourteenth Amendment claim against Defendants for depriving Plaintiff of a protected liberty interest without due process of law by punishing him with 3 months in segregation after finding him guilty of a false disciplinary ticket issued by Officer Sparling.
>
> **Count 5 -** Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement at Menard for up to 3 months in segregation beginning in March 2016.
>
> **Count 6 -** Claims against Defendants for violating numerous Illinois Department of Corrections regulations.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. These designations do not constitute an opinion regarding the merits of the above-referenced claims. **Any claims that are encompassed by the allegations in the Complaint but not identified above are considered dismissed without prejudice for failure to meet the *Twombly* pleading standards.**

<u>Claims Subject to Further Review</u>

**Counts 1 and 2**

At this early stage, the allegations support a retaliation claim against Officer Sparling in Counts 1 and 2. To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that (1) he engaged in conduct protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).

Here, Plaintiff's pursuit of grievances and crisis intervention services could be considered protected under this standard. *See Bridges*, 557 F.3d at 554 (stating that "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") (emphasis in original). *But see Brown v. Darnold*, 505 F. App'x 584, 588 (7th Cir. 2009) (stating Court has not "decided whether a threat to grieve is a protected activity). Further, the chronology of events and comments made by Officer Sparling sufficiently suggest that his

7

decision to issue Plaintiff a ticket was retaliatory. Therefore, Counts 1 and 2 shall receive further review against this defendant. Plaintiff identifies no other defendants in connection with these claims, so Counts 1 and 2 will be dismissed without prejudice against all other individuals.

**Counts 4**

In order to state a Fourteenth Amendment due process claim based on Plaintiff's punishment with segregation for a false disciplinary ticket in March 2016, Plaintiff must demonstrate that he was deprived of a protected liberty interest without due process of law. *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 779 (7th Cir. 2008) (internal citations omitted). Without a protected liberty interest, no process is due.

A protected liberty interest arises only if Plaintiff's placement in segregation "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When making this determination, courts consider two factors: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98) (7th Cir. 2009) (emphasis in original)). When the time spent in segregation is sufficiently short, dismissal of an inmate's due process claim is often appropriate without a detailed inquiry into the conditions of his confinement. *See, e.g.*, *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005) (2 days in solitary confinement); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (70 days in segregation for inmate serving 12-year sentence). However, longer periods of time spent in segregation or exposure to particularly harsh conditions trigger due process protections. *Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (noting that cases involving segregation of less than 30 days may be dismissed without a detailed factual record

regarding conditions of confinement, but holding that 77 days' segregation warrants further review).

In the context of a prison disciplinary hearing, these procedural protections include advance written notice of the charges, the right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed. *Wolff v. McDonnell*, 418 U.S. 539 (1974). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To decide whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Plaintiff's punishment with 3 months in segregation, combined with the conditions he describes could give rise to a protected liberty interest that triggers due process protections. Plaintiff alleges that he was denied due process of law at his original hearing and rehearing when he was provided with no advance notice of the hearing, was not allowed to attend the hearing, and was refused an opportunity to call witnesses, among other things. Based on these allegations, this claim is subject to further review against those defendants who were personally involved in issuing, hearing, and reviewing his ticket, including Officer Sparling (who issued the allegedly false disciplinary ticket in March 2016), Lieutenant Brookman (who served as the Adjustment Committee Chair in March and June 2016), Lori Oakley (who recommended reconsideration of the ticket without providing any notice to Plaintiff), and Kimberly Butler (who approved the March and June 2016 decisions). (Doc. 1-1, pp. 6-7, 10-11).

However, the claim must be dismissed without prejudice against the remaining defendants because they were not personally involved in the challenged conduct. This includes Major Carter, Lieutenant Koehn, and Anthony Williams, who listened to Plaintiff's explanation for going on a hunger strike and agreed with his version of the events giving rise to the disciplinary action. This also includes Larissa Wandro and Jacqueline Lashbrook, who would not lift unspecified restrictions against Plaintiff, even after his ticket was expunged. Plaintiff does not identify these "repercussions" or develop his claim against these defendants. Assuming that Plaintiff challenges his continued loss of commissary privileges and demotion to C-grade status, however, the law is clear that neither gives rise to a protected liberty interest that triggers due process protections. *See Cunningham v. Eyman*, 17 F. App'x 449, 454 (7th Cir. 2001) (no protectable interest in loss of institutional privileges resulting from demotion to C-grade status).

Finally, the claim cannot proceed against other non-parties, who may have been involved in this matter, but were not identified as defendants in the case caption. This includes Terrance Jackson who is listed as a member of the adjustment committee at the March hearing, Jason Hart who is listed as a member of the adjustment committee at the June 2016 hearing, and Counselor Hill who Plaintiff asked to intervene. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). This claim (and all others against non-parties) shall be considered dismissed without prejudice from this action.

**Count 5**

Although the Eighth Amendment offers Plaintiff no protection against deprivations of liberty interests, it does protect him from cruel and unusual punishment by prison officials. The Eighth Amendment is violated by prison officials who are deliberately indifferent to conditions of confinement that result "in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

The conditions described in the Complaint could be considered objectively serious under the Eighth Amendment. These conditions include an unclean cell, denial of cleaning supplies, no access to hygiene supplies, inadequate bedding, inadequate clothing, and routine taunting by prison officials, among other things. "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)). The "exposure to psychological harm or a heightened risk of future injury from living in an infested [facility] is itself actionable.'" *Budd*, 711 F.3d at 843 (citing *Thomas v. Illinois*, 697 F.3d 612, 615-17 (7th Cir. 2012) (admonishing district judges to treat psychological and probabilistic harm from unsanitary and infested prisons as seriously as realized physical harm)). The allegations in the Complaint support a claim against Officer Sparling, who initially placed Plaintiff in segregation and regularly returned to taunt him. As Plaintiff identifies no other defendants in connection with this claim, it will be dismissed without prejudice against all other individuals.

### Claims Subject to Dismissal

### Count 3

Plaintiff cannot proceed with his claim against "IDOC Staff" and "Mental Health Services." These terms describe groups of individuals. However, Plaintiff did not identify either group as a defendant in this action or identify those individual defendants who are included within either group. As it stands, the "IDOC Staff" and "Mental Health Services" are not "persons" who are subject to suit under § 1983. Count 3 will therefore be dismissed with prejudice.

### Count 6

Plaintiff also cannot proceed with a § 1983 claim against the defendants based solely on the violation of a state regulation. This is because the failure to follow procedures that are mandated by state but not federal law can only establish a state law violation and "are not remedial under [§] 1983." *White v. Olig*, 56 F.3d 817, 821 (7th Cir. 1995). Accordingly, Plaintiff's claims against the defendants for various violations of state regulations must be dismissed with prejudice. *See Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (dismissing claim that defendants did not comply with applicable state regulations).

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 3** and **6** are **DISMISSED** with prejudice against the defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 1, 2** and **5** are subject to further review against Defendant **SPARLING.** However, these claims are **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 4** is subject to further review against Defendants

**BUTLER, SPARLING, BROOKMAN,** and **OAKLEY.** However, this claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

As to **COUNTS 1, 2, 4** and **5**, the Clerk of Court shall prepare for Defendants **KIMBERLY BUTLER, JORDEN SPARLING, KENT BROOKMAN,** and **LORI OAKLEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 13, 2018**

                                                                   s/ STACI M. YANDLE
                                                                   **District Judge**
                                                                   **United States District Court**